The litigation has been tied up in federal court now for over five years. There are 42 cases filed by Plaquemines Parish in the eastern and western districts, 30 in the eastern district, 42 total cases, yes, and 30 cases in the eastern district. And these cases were removed for a second time in 2018 based on federal officer jurisdiction. The lead case was a case called Plaquemines 2 decided by Judge Fellman. Judge Fellman found no jurisdiction, but the important issue here for this case is that all of the cases in the eastern district were held up, stayed, during the entire time that the Fellman case, Judge Fellman's case, which was originally called Plaquemines v. Riverwood, was decided. And the bad thing about that is that that case came up, Judge Fellman found no federal officer jurisdiction, came up to this court, and it came up at the, well, you know the history, okay. So it's time for us to get back to state court is really the situation here. And we had, we have an order, we have a remand order in this case and several other cases in the eastern district, and that remand, those remand orders have all been executed. Letters have gone out to the clerks of court. And now, and in this particular case, when Judge Fellman reopened the case, he issued a letter and the letter went out. He reopened the case. We know all, we know the history. Okay, all right. It's a legal point. So the legal issue is really quite simple and quite straightforward. What Judge Fellman had left after he did that was the right to review his remand order, before the appeal, obviously. And then that case was, and then this case was appealed. It's on appeal now. So does the remand, does the execution of the remand order deprive Judge Fellman of the right to stay the case? In other words, stated differently, is, is the jurisdiction to review the remand order, does that also entail or bring with it the jurisdiction to stay? My point is this, there's never been a case that says that. All of the case law that is cited deals with the Shell case, the Digicon case, all deal with the right of the district court to review and reverse its own remand order. BP America litigation, three times our court had to find jurisdiction, whether they published or explained that rule or not. Well, they had to conclude they had jurisdiction. That, well, I can't find how it did. I agree, but, but the issue was squarely presented three times to that panel. And, and I guess one can infer it's the logic Judge Fallon ruled, similar to his which is we've got Shell Oil and Shell Oil, the corollary has to be if you can vacate your remand, you've got to be able to stay it. That's, that's sort of the circle of reasoning. That may be the reasoning, but I can't find any law that supports that. And, and quite honestly, I think if there was a reason for it when the case came up here, maybe there would have been a decision about it and there would have been an explanation because, but the issue was complicated and I can see why this court did what it did because what happened is that when the, the Oster cases, Cameron versus Oster was the name of the case in, in the Western District. When it came up, this court, uh, the Judge, Judge Semmerhase and district court refused to stay. This court granted the stay. I asked for the stay and what happened was Judge Fellman's case, Plaquemines was already here and the cases had been consolidated and there was no argument about losing jurisdiction to stay in Judge Fellman's case because he withheld, uh, the letter going out to the state court. He withheld that before he issued his stay. Right. He's well, very seasoned. And, and he's very seasoned. Exactly. And that's why in BP America, uh, uh, Mr. Keisler actually asked an oral argument. He knew the law. He, he, he agreed with the, he apparently agreed with the interpretation of the law that I have here, that once that letter goes out, the statute, the text of the statute is very clear. Subject matter jurisdiction is transferred. And I don't find anything, any law that, or does it just say the court may proceed? It says the state court may proceed. So why isn't that a world of concurrent jurisdiction? The appeal goes forward federally because you're agreeing if in the end we extend Latio lay to cover this upstream refinery argument, it'll come back. Well, I'll explain to you exactly why, because if that's the rule, if there was concurrent jurisdiction, then when there's a, when this court issued a re, when the, excuse me, when the Zerang case, which came up in this court, Zerang and the Savoy cases, the asbestos cases, those cases up and there's evidence in the record, those cases were sent back and there were extensive proceedings in both of those cases. I don't think that this court, that, that, that the district courts in those cases could have simultaneously been, uh, litigating those cases while those cases were in its state court. That's an interesting point of conjecture, but we're not there yet, right? The BP panel got there issuing an injunction. We don't really even to, to that, as I see it, have that necessarily before us. Well, I mean, I guess, I guess I can try to move the, why aren't these district judges saying essentially they're thinking we got to respect an appeal opportunity of our rulings. We think we're right. You've won in front of every single one of them, but you know, the fifth circuit may decide we're wrong. So they're in a slightly cursory fashion saying, we're going to stay the order. Well then. And, and you don't have authority that says they don't have jurisdiction to do that. You're just saying, where's the authority that says they do, right? I, I think that 1447C, when it says the state court may proceed, that is an evident, that is actually a statement that you, the state court, have subject matter jurisdiction and that this court and that the federal system no longer has subject matter jurisdiction. It has jurisdiction to review its own orders. Let's say you lose your, I mean, because your time's going, let's say we decide there is jurisdiction. Okay. Do you still, at that point, do you lose or do you think there was an abuse of discretion? I think that the discretion was incredibly abused in this particular case. I think this appeal is absolutely frivolous and I'll tell you why. And I think you might agree. And I'm going to just quote a couple. I don't have but a minute to go over all of, because we, okay. All right. The argument is this. The argument is that, that when you have, of all 42 cases, there's actually 10 cases where this happened, where you have oil production and refining in the same company, then they can rely on, that the defendants can rely on instructions or directions from the federal government to refineries that don't even mention oil production. You're arguing abuse of discretion, implicit balance ruling, because they don't have a substantial likelihood of success as to their 1442 order. That's your argument. That's my argument. My question to you is, in the context of this stay pending appeal, they don't have to show probability of success. They've just got to show they've got a substantial, serious legal issue. Correct? They do. And that is the correct statement of the law. It sounds like it's a substantial issue. Just what did we mean by Laddie O'Leary? How expansive is it? Well, I will tell you why it's frivolous. And I'm going to quote, it's in the record of this case, not in the record of the briefing and the motion, but it is. This is the argument, and I'm going to quote, the argument that defendants are showing is that they are not required to show, and I'm quoting, they are not required to show that the federal government directed the challenged activities. We're not going to decide that issue. I know that. Whether it's a serious legal issue, and you're saying it's a frivolous one. I'll say, and I'll, I'll tell you what, I just said that. They say that they're not required to show that. Well, let's look at the first line of the Watson decision, which deals with the acting under requirement. And it says, the federal statute permits removal only if Philip Morris, in carrying out the acts that are the subject of the petitioner's complaint, was acting under an agency or officer. It is patently, obviously, a frivolous appeal. Well, we'll hear what they say, but they would say, the government said in World War II, we need you to refine oil. And necessary to that command, they had to have oil. Yeah, well, that's, yeah, they had to have oil. That's like, that's like saying, you know, we're going to give you the biggest oil market in the history of the world, and you're, we're going to force you to have to do it. That doesn't, it just doesn't fly in light of the evidence in the record. It doesn't fly in light of common sense, because what happened during World War II is that if there was one agent, one thing that the government did not have to issue directions for, is for the oil companies to make more oil, to produce more oil, to sell it to the government. In act, in actuality, the, the production had to be restrained in order to preserve the reservoirs using the allowables. Our court's panel that's going to decide to consolidate cases will be resolving this, but you're not in any, neither side here is saying we should carry this motion with that case. No, look. That would be denying your relief, I take it. It would be denying my relief, and I have a separate, a separate right to agree to lift, to relieve, to lift the state. And, and just kind of taking a 10,000 foot view of this, this case has been in federal court for over five years. It's been in federal court longer than the, than it took, it's been in federal court involving a World War II issue, actually longer than it took the United States to defeat the Axis powers. To me, that just doesn't make a lot of good sense that that has happened. Now, if there's, but I'm not, I'm just asking you, and that's taking a pedestrian view of it, but what I'm asking you now is to just look at what their argument is, and they just don't have an argument. And the way you can be persuaded on it, because we don't have time to deal with it here, but Judge Zania's opinion is the most comprehensive opinion, and he takes this, he takes their argument apart piece by piece by piece, and there's nothing left. Am I right that Judge Fallin, not seeing much of a contest there, just said judicial efficiency? Well, oh, the equities favor stay because it's not efficient to let it go to state court. Yeah, and balanced against that is this. Our experts are actually, this case has gone on so long, our experts are dying off. We've been prejudiced. We have, Woody Gagliano was one of our experts. He was the, he created all of the coastal science in this, in this, he's dead. The person who headed the permitting department, which is what this case is about, in 1980, he's dead. He just died. I don't mean, I don't mean to be macabre, but if you're making a prejudice argument, which does go to the balance of equities, I just want to be sure that the facts are in this record. Well, I can't say they are. Okay, also another part of the equities here, perhaps, we asked for letters from each side about what's happened so far. Is there any indication the state court would even go forward if this is still on appeal on the merits in this court? Yes, it is, Your Honor, and I'll explain why. When the case was removed the second time in 2018, there were, I think, I think there were 18 cases in Plaquemines Parish. All of the parties amicably agreed that five would go forward. The lead case in that case was the Roselle case, which was really, the report in that case caused all of the removals. When we get back, obviously, we're going to have to rearrange the situation because the cases going back that have been remanded are not going to be the cases that, we're not going to have the whole suite of cases to choose from that we did when we were back the first time, back in state court the first time, but we want to move this case in Plaquemines Parish. We can't do it now. We can't do it now. Only two of the cases, only two of the cases that have been remanded, there are only two out of the 30 in the Eastern District that have been remanded, and those two were held up in federal court on allegations of wartime activity, and there was no activity in those cases. To show you how frivolous this whole enterprise has been, there was no wartime activity at all in those cases. There wasn't any activity until after the war. So, yes, we would, we want to move these cases. We only have one case we're moving, we're picking a case in Cameron Parish. That case is set for trial in November, and we'd like to have another case set for trial in Plaquemines Parish. All right, counsel. Thank you. Thank you, your honors. May it please the court, on behalf of the removing defendants, Lexi White. I would begin by noting that 20 cases have been remanded to the requested in those cases, and the plaintiffs have not demonstrated that Judge Fallon lacked the power to stay this case, nor have they demonstrated that he abused his discretion in granting a stay on the record that was before him here, which is different in ways that I will discuss. First, the mailing issue, as your honor noted, is not new to this docket. The Fifth District Court issued a stay order to the District Court, and this court issued a stay after hearing all of the same arguments that were raised here. And one reason that is significant is to highlight that the plaintiff's proposed rule would not be limited to district courts. Under the rule, the plaintiffs would have this court adopt, and it would be a new rule. Simply mailing the remand order would operate to deprive this court of its power to issue a stay, not only in this case, but in entire categories of cases. It was unpublished. There's no reason. Can you point to a circuit case that explains how the position you're arguing still validates Congress's language, 1440 what, C, the C, subsection C? State, once it's sent, the state courts can proceed. At least two cases from this court, your honor, in Raychelle and Digicon, both of which hold without qualification that where an exception to non-reviewability exists, which here it plainly does, then the District Court retains jurisdiction to reconsider its order and to vacate that order. And Judge Fallin correctly reasoned from that precedent that the power to issue a stay. Not expressly, your honor, though I would note on page 1525 to the Fifth Circuit's opinion in the in Raychelle case, the court notes that the Fifth Circuit did grant a stay. We aren't told, but presumably that would have happened after the District Court mailing that was the subject of that opinion occurred. So it may not be something that the courts have seen a need to write separately on, but Judge Fallin correctly reasoned that the power to grant a stay is incidental. It is a lesser power than the power to vacate or reconsider. So you're embracing Judge Fallin's analysis? On that issue, yes, your honor. Okay, but you're not embracing his footnote, I take it, where he says the reason this doesn't violate the Anti-Injunction Act is I'm not saying anything about what the state courts can do. Well, I think Judge Fallin correctly held that this does not run afoul of the Anti-Injunction Act because a stay is not an injunction. It is... Okay, but therefore a stay is not an injunction. Correct, your honor. Therefore, these state courts can proceed and yet we can proceed as well? I think what Judge Fallin recognized, which is consistent also with the Supreme Court's decision in the Holder case from 2009, is that a stay like this one is ordinarily not considered an injunction because it doesn't have coercive effect. An injunction... Why in the letter to us did you, I think you acknowledged that your response to a discovery request was we don't need to do anything in state court? That's correct, but the question of whether an injunction would become necessary would only come into play conceivably if the state court opted to move forward in the face of a stay. And I should clarify that even in that circumstance where the state court opted to move forward in the face of a stay, making an injunction conceivably necessary, the Anti-Injunction Act still would not bar issuing an injunction because, as this court recognized in the Myerland decision, the Anti-Injunction Act does not prohibit an injunction to preclude a state court from moving forward in a removed case. It's one of the expressly authorized, authorized by an act of Congress, exceptions to the Anti-Injunction Act. The exception there being 28 U.S.C. 1446d, which precludes state courts from moving forward when a case has been removed. So when a stay order is issued by a federal court, this court or the district court, it operates to halt temporarily the legal effect of the court's remand order. And what that means is the case is still a removed case, and an injunction to enforce a court order that is staying a remand order under that circumstance would not run afoul of the Anti-Injunction Act. Well, counsel, there's not a lot of case law specifically how 1447c is supposed to work, but it does to me what you just said is one reason why it looks as if jurisdiction has passed. If sending the letter, it doesn't say receipt, but I guess receipt may be part of it, allows the court to proceed, state court, that means jurisdiction has arrived. The stay comes five days later. Jurisdiction comes back, in your view. And that doesn't seem quite compute to me. And that once sent, it takes more to retain that jurisdiction. But nonetheless, your argument about injunctions and how that might fit into the exception is also worth considering. We'll just have to deal with that. I was on the panel, all of us have been on panels that have dealt with this issue before, as you probably well know, and our reasoning may need to be explained this time. Well, I think the tension that your honor is confronting is inherent in the fact that this case remains reviewable. So while section 1447c, the plaintiffs have argued, does fix the time upon which jurisdiction is vested in the state court, even the plaintiffs would concede that in a case like this, which is reviewable, where the remand order is reviewable on appeal, the state may no longer proceed with the case if the remand order is reversed or if it is vacated. And in fact, that was the case in the Shell Oil decision, the Fifth Circuit, much later after the remand order vacated. Which would be much different for a district judge to send jurisdiction of a case to the lower court, to the state court, an equal level court, and then for the appellate court to say that was error, legal error. It seems to me not geometrically different, but fairly significantly different. Correct, and that's why Judge Fallon reasonably concluded that in the context of this docket, where there are 20, no less than 20 cases active in the state court that have not been stayed, that this case, which presents a different question, that it made sense to stay this case temporarily while the Fifth Circuit decided whether to either vacate or reverse the court's remand order. And if I could turn briefly to the merits of what you do, I mean, is there any relevance to circumstances where federal district courts transfer cases to other federal district courts where, unless I'm mistaken, a party's got to be very alert, move to stay the transfer, or it's gone? I'm not sure what relevance that would have in this circumstance. I think the plaintiff's argument is that there's something final about the mailing of the remand order that can't be undone. And our point, and Judge Fallon correctly concluded, that simply doesn't apply in a case where the order is because, as no one disputes, this court could reverse the remand order, in which case the state may no longer proceed. And so staying a case, quite reasonably, just temporarily halts the operation of that mailing. Go ahead. Plaintiff's second argument is essentially that Judge Fallon abused his discretion in finding that there was a substantial showing on the merits here. And Judge Fallon had the full record, which was summarized only in parts to you in the argument that you just heard. Judge Fallon, with the benefit of that record, recognized that there's a question here that was new and that warranted a temporary stay, even though he ruled against us on the merits. And by way of background, in this court's Plaquemines decision, we removed a number of related cases. The court disagreed with our theory of removal, but indicated that a narrower set of the cases might stand on a different footing. Specifically, refineries who had federal contracts and acted pursuant to those contracts can likely remove under 1442. Well, this is such a case. The removing defendant Tidewater's contract with the federal government required it to of 100-octane and 91-octane aviation gasoline. That is a product with just one customer. It is fuel for military aircraft. Now, to show that Judge Fallon abused his discretion here, you heard the argument that, well, Tidewater's contract with the government may have meant it was acting under when it was refinery, but that contract didn't have anything to do with the challenged production practices here in Venice Field in Plaquemines Parish, Louisiana. Well, the record that was before Judge Fallon clearly reflects that the government disagreed that Venice production was unrelated to this contract because not all crude oil was capable of being made into avgas, but the crude in Venice Field was. The record shows that at 33364 of the record on appeal, that Venice crude was ideally suited for processing, end quote, at Tidewater's avgas refinery. That is one of the reasons why the government's Office of Petroleum Coordinator for War identified the Venice Field in Plaquemines Parish as, quote, And in point of fact, that's not correct. On this record, the government's, a government agency, the Office of Petroleum Coordinator for War identified the Venice Field in Plaquemines Parish, the field that is the subject of this dispute. Well, it said it's critical and essential to the war effort precisely because it is at 33385, Your Honor, and I should note that there's historical affidavit, an affidavit from a historian that's at 29618, which lays out additional evidence supporting the connection. The government's command comes in several places, Your Honor, but I would highlight that one. I would highlight that one, Your Honor. For that, I would highlight 29618 because it's an affidavit that details all of the extensive evidence where the government identified the Venice Field. The requirement of where it comes from is in the historian's affidavit, but if I, am I just correct, the command from the government, the contract is at 33385, but you're now saying that doesn't specifically say where the oil is going to come from? No, I should clarify, Your Honor. The contract itself is at a different point in the record, but I think I should probably, that is at 29999. This is a very voluminous record, but if Your Honor wanted to see all of the commands in which the federal government identified, again, then I would say 29618, which details the evidence where the government recognized a connection, and again, the old causal nexus test no longer exists, so it cannot be required that the government precisely dictate the challenged conduct, which here relates to Venice Crude, within the four corners of the contract, no less. Now, the question after Latio Lay is, is there a relationship or a connection between the challenged conduct, the challenged production practices in Venice Field, and the government's need to get avgas pursuant to a federal contract with Tidewater? In this day, pending appeal, you've got to show you're going to likely win on that or less? That there's a substantial showing, that it's a serious legal question, and we believe we've met both standards here. If that is the standard, you then do have to show that the balance of equity is heavily weighing your fate, correct? If it's merely a substantial legal question, I believe you're correct, Your Honor. If it's a substantial legal question, I believe you're correct, Your Honor. I think that's a good question, and I'm going to try and move to that, because, of course, we don't have that much from Judge Fallon here, so you would point to what? They're obviously pointing out there's been 10 years and no movement on the merits, and according to oral statements now, experts are dying, so why would you be prejudiced if you just have to go forward and stay court? It sounds like you are in 20 other cases. Two things, Your Honor. The plaintiffs cannot show that they opposed to the 20 that they're free to go forward in would substantially injure them under the circumstances that they have not chosen to go forward in any of the 20 cases that were remanded, including... You've got the burden to show that the balance of equity is heavily weighing in your favor, correct? We believe there's a strong showing on the merits here, Your Honor. I'm asking you, I don't see any irreparable harm or any case law supporting it. I'm just saying things emphatically. It's the way I talk. That you have any harm if you've just got to begin to move forward and stay court? Well, what Judge Fallon implicitly found when he found that the balance of harms is in our favor here is that the irreparable harm to defendants is acute. In the one case of the 20 that they have available to them, including seven in Plaquemines Parish, that they've opted to do nothing with, in the one case that they did choose to move forward in, which was in Cameron Parish, Louisiana, the plaintiffs asked for and were granted a trial setting no less than nine months from the initial status conference. That is sooner realistically than this court could hear the appeal in this case. That's what a number of district courts have found when they found that defendants, quote, would face the possibility that the state court would decide the merits of the claims or address dispositive motions before the removing defendant's appeal is fully exhausted. I'm a little confused. That's a Cameron case, which he did describe. That isn't the case here, though, right? Because no cases in Plaquemines Parish are cases that the plaintiffs have opted to go forward. And what Judge Fallon found was it is hard for the plaintiffs to say that their interests are substantially injured when they have a number of cases in Plaquemines Parish that have been remanded and not stayed because they do not present the facts that are on the record here and the plaintiffs have opted to go forward with none of them. But on the flip side, the irreparable harm to the defendants is acute because in the one case where they have chosen to go forward, the court set the case for trial before this court could realistically hear the appeal. And so Judge Fallon reasonably concluded under those circumstances that it is essentially a new question. These facts did not exist in the case that this court decided last year. In this case before us, where you have said we're not even going to provide discovery, we are a long way from a state court getting to any ruling. So why am I wrong thinking that you are in the same footing that Zering and Savoy defendants were in, which is time's going to go forward. It's already been 10 years. We don't expect any final ruling in state court. In this case, we'll get our appeal decided and then you might end up back in federal court. Well, I should clarify the case that was set for trial nine months from the original status conference was in the exact same posture that this case was in. So what the district courts have repeatedly found, and it was not just Judge Fallon, was that it would put the defendants to the irreparable harm of having dispositive motions ruled upon. I'm not familiar with and I'm not thinking about the other cases. I'm just looking at Judge Fallon's case. And in this case, where you're saying the station exists, we're still at the discovery stage in state court. That's right. But what the balance of harms looks at is what would happen if we allowed this case to go forward in state court. We don't have to conduct a hypothetical exercise, we know, because in the one case that has gone forward, it would be set for trial sooner than this court could hear the appeal. And that's what's every district court who has weighed the harms. They have found that the plaintiffs cannot articulate. This very case, just talking about this case, was stayed in the state court before it was even... It's not the cause of litigating. It's that you think that you'll be denied a federal court altogether because some state court's going to rush to judgment. It is both, and it is... Well, the courts that have focused on the irreparable harm typically focus on what is more acute here and more obvious. That is the loss of a federal forum and putting the defendants to the choice of having to present their colorable federal defenses. Remember, this case is about what happened when production commenced in Venice Field. Was it unlawful during World War II? Was it in bad faith during World War II? The irreparable harm that federal courts have focused on is putting the defendants to the choice of having to defend themselves in a state court where their defense is essentially governmental immunity. And in addition to that, several courts, including the district court in this case and Judge Feldman in the Plaquemines versus Riverwood case, have found that there would be judicial efficiency and it would be a waste of the party's resources to require them to engage in a defense that would essentially have to start over from scratch. That that would not be a good use of the party's resources or the court's resources under these circumstances where the plaintiffs have an additional 20 cases that they could advance that do not present this new question and that it made sense on this record to temporarily stay this one case. Thank you, Your Honor. All right, Counselors, thank you. What counsel was referring to, Your Honor, in terms of critical fields and identifying particular crews to go to particular areas, it's all addressed in actually in defendant's record by David, Mr. A.J. Gravel. What happened during the war was that the government developed an allocation program where they wanted to make sure that each and every refinery was operating at full capacity. And so once crude was produced in the field, the government assigned it and the identity and there's clear evidence in the record that the identity of the owner of any particular refinery had nothing to do with where the oil went. What they were told, what Okay, I don't have a page number but it's an affidavit of, there's two affidavits in the record. A.J. Gravel, I think it's in the allocation program is in paragraph five of his original affidavit in that case. And the, now A.J. Gravel has an affidavit in the, I think a couple of affidavits in the record and also J. Brigham, B-R-I-G-H-A-M, but . . . I'll say this to both Counselors, I want each of you to submit letters by tomorrow that gives us these record sites. Sure, we'll be glad to do that, Your Honor. But the term critical fields is what, the record reference that was given to you by Counsel is a description of what the government called critical fields and what Mr. Brigham explains that that designation had more to do with the exposure of the refineries to sabotage than anything else. It's a misconstruction of the intent of the record, of the intent of the program, but basically the affid, the contract says absolutely nothing and it's admitted by the defendants that the contract says exact, that refinery contracts say nothing whatsoever about crude production. There's nothing whatsoever about any actions taking under, taken under those contracts that are directed by the federal government. In terms of the Anti-Injunction Act, Your Honor, I think this is in effect an injunction because what, just the text of the Anti-Injunction Act says a court of the United States may not grant an injunction to stay proceedings in state court. Well, that's what's going on here, trying to stay proceedings in state court. Now, there is no, we admit there's no case in point, but all of the case law that's being discussed here that in support of denying us to go forward in state court deals with the reviewability of remand orders by the district court. The district, we don't contest the fact that this court, and this is a federal officer case, that this court and the district court could reverse its remand order. It certainly can, and it has the jurisdiction to do that. Jurisdiction to review and reverse. But until that happens, we have an executed remand order, and in an executed remand order, we're entitled to go forward. And, you know, just generally, the general treatise law is consistent. Wright Miller, we quoted in our brief, basically says the effectiveness of a remand order does not prevent a federal appellate court from reviewing a remand order that is appealable. That's all that case law is about. We've only got a minute, so I'd love you to get to balance of equity, especially the Cameron case. Okay, all right. The Cameron case, Cameron is a one-parish judge, okay? There was one judge and one parish. Everyone got together and agreed that we would have a early trial date, but it was set within nine months. That slightly supports Chevron's argument that that case, we could get all the way to closure before the Fifth Circuit decides the relevant federal form. Yeah, but there is a constant drumbeat of motions and so forth in hopes that that trial date will be continued. Now, it hasn't been continued. It's set for trial. It's time for us to go to trial. It's been ten years, but even if that case got . . . the facts are different in Plaquemines. The idea that this case, and that's really what the issue is, the idea that this case can get to trial in nine months, it just doesn't fly because what we have is we have depositions and we have all of the experts in that case are the same experts that in this case. It'll be 18 months before we can ever get to trial in the case that's before your honors. So the balance . . . there's absolutely no chance that this court will not issue a decision prior to the time we could get it to trial in Cameron Parish . . . in Plaquemines Parish. All right, counsel. I thank both of you for bringing your understandings of this case to us. I will take it under advisement. We are adjourned. Thank you.